IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SOLOMON PENA,**

    **Plaintiff,**

vs.                                                                Cause No. 2:15-cv-00230-LH-WPL

**THE GEO GROUP, INC., JEFF
WRIGLEY, J.W. BEAIRD, LIZA
ELIZONDO and KATIE HARRISON,**

    **Defendants.**

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed.R.Civ.P. 56, Defendants The GEO Group, Inc., Jeff Wrigley, J.W. Beaird, Liza Elizondo, and Katie Harrison, by and through their attorneys of record, Yenson, Allen & Wosick, P.C. (April D. White), hereby move for summary judgment on all of Plaintiff Solomon Pena's claims against them. As grounds for their Motion, Defendants state as follows.

### Introduction

Solomon Pena is an inmate in the custody of the New Mexico Corrections Department currently housed at the Lea County Correctional Facility ("LCCF"). (Complaint [doc. 1-1] at ¶ 5). LCCF is operated by Defendant The GEO Group, Inc. ("GEO"). (*Id.* at ¶ 6). At times relevant to the Complaint, Defendant Jeff Wrigley was the Warden of LCCF, Defendant JW Beaird was the Security Warden, Defendant Liza Elizondo was the Grievance Officer, and Defendant Katie Harrison was the Inmate Employment Coordinator. (*Id.* at ¶¶ 7-10).

In his Complaint, Pena alleges Ms. Harrison subjected him to cruel and unusual punishment and violated his procedural due process rights by denying Pena's application to work

1

the graveyard shift in the LCCF kitchen. (*Id.* at ¶ 35). Pena claims Lt. Elizondo subjected him to cruel and unusual punishment and violated his procedural due process rights when she rejected two inmate informal complaints regarding Pena's employment assignment. (*Id.* at ¶¶ 39, 40). Pena alleges Warden Beaird subjected him to cruel and unusual punishment and unconstitutional retaliation when he informed Pena he could not work in the kitchen because he would "complain." (*Id.* at ¶ 36). Finally, Pena alleges Warden Wrigley violated his constitutional rights by failing to supervise Ms. Harrison, Lt. Elizondo, Warden Beaird, and an unidentified employee who failed to process an inmate informal complaint regarding Lt. Elizondo's conduct. (*Id.* at ¶¶ 33, 34, 37, 38, 41). Pena seeks to recover nominal, compensatory, and punitive damages, and also asks the Court to award injunctive relief. However, as discussed further below, Pena cannot come forward with evidence to support any cause of action asserted against any of these Defendants, and his claims must be dismissed.

## **Statement of Undisputed Facts**

Defendants, for purposes of this Motion for Summary Judgment only, state the following undisputed facts.

1. At the time he filed his Complaint, Pena was an inmate in the custody of the New Mexico Corrections Department ("NMCD") housed at LCCF. (Complaint [doc. 1-1] at ¶ 5).

2. LCCF is operated by GEO pursuant to a contract with Lea County. (Complaint [doc. 1-1] at ¶ 6). GEO is required to follow NMCD policies regarding the operation of the facility, including policies and procedures governing inmate employment. (Ex. A, Affidavit of Warden John Beaird).

3. Pena was transferred to LCCF in June 2014. (Ex. A).

4. On August 22, 2014, Pena submitted an Inmate Employment Application, seeking to work the graveyard shift in the LCCF kitchen. (Ex. B, Affidavit of Katie Harrison; Ex. C, Inmate Job Application). The Inmate Employment Coordinator, Katie Harrison, has no record that Pena submitted a formal application for employment in the kitchen in June or July 2014. (Ex. B).

5. NMCD policy characterizes inmate employment in the kitchen as a "security sensitive job assignment." (Ex. B; Ex. D, Excerpt from Inmate Employment and Labor Compensation System Policy).

6. When an inmate applies for a security sensitive job assignment, NMCD procedures require facility staff to perform a security screening, which involves a review of the inmate applicant's file. (Ex. B; Ex. E, Excerpt from Inmate Employment System Procedure). The decision to approve or deny an application for a security sensitive job assignment is made by security personnel. (Ex. A; Ex. C).

7. Pena had previously been housed at LCCF. (Ex. A).

8. While previously housed at LCCF, Pena was assigned to work in the facility kitchen. (Ex. A).

9. While employed in the LCCF kitchen, Pena was found to be in possession of an 8-inch homemade shank. (Ex. A).

10. While employed in the LCCF kitchen and while serving a meal in the chow line, Pena engaged in a physical altercation with another inmate. (Ex. A).

11. Based on these prior incidents of misconduct, security personnel at LCCF denied Pena's application for employment in the kitchen. (Ex. A). Ms. Harrison notified Pena of the decision on September 16, 2014. (Ex. B; Ex. F, Memorandum).

12. During the relevant time period, inmates at LCCF had three primary means to challenge prison conditions: the grievance procedure, the classification appeal procedure, and the disciplinary appeal procedure. (Ex. G, Affidavit of Lt. Elizondo).

13. The denial of Pena's application for employment is a classification issue. (Ex. G; Ex. H, Excerpts from Institutional Classification Policy). Thus, the appropriate means for Pena to challenge that denial was through a classification appeal. (*Id.*). Classification issues are defined as "non-grievable" by the inmate grievance policy. (Ex. G; Ex. I, Excerpt from Inmate Grievance Policy).

14. Pena submitted two inmate informal complaints through the inmate grievance procedure to address the fact that he had not been given a position in the kitchen. (Ex. G; Ex. J, Informal Complaint I; Ex. K, Informal Complaint II). Both informal complaints were rejected because they raised a classification issue. (Ex. G).

15. Pena submitted a classification appeal regarding his job assignment. (Ex. A; Ex. L, Inmate Classification Appeal Form). That appeal was denied. (*Id.*).

16. Warden Beaird never told Pena that he was denied the position in the kitchen because he would complain. (Ex. A).

17. Pena's employment application was denied for security reasons, not because he has filed any IPRA requests, grievances or lawsuits. (Ex. A).

18. Pena was offered employment working under Captain Heredia. (Ex. B). However, he failed to report to work in that position. (Ex. B).

22. Pena is currently employed as a pod porter in his housing unit. (Ex. B).

23. Pena is eligible to reapply for a position in the kitchen in March 2015. (Ex. B).

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although the burden of showing the absence of a genuine issue of material fact is upon the moving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

**Argument and Authority**

I.      **Pena's Federal and State Claims against Ms. Harrison Fail on Their Merits.**

The Complaint alleges Ms. Harrison violated Pena's Fourteenth Amendment procedural due process rights and subjected Pena to cruel and unusual punishment in violation of the Eighth Amendment by denying his application to work the graveyard shift in the LCCF kitchen. (Complaint [doc. 1-1] at ¶ 35). The Complaint also alleges Ms. Harrison's actions violated the equivalent provisions of the New Mexico Constitution. (*Id.*). However, these claims are without factual or legal support, and Ms. Harrison should be dismissed as a party-Defendant herein.

First, the undisputed facts establish that Ms. Harrison did not make the decision to deny Pena's job application. Instead, that decision was made by security personnel following a review

of Pena's entire file. For this reason alone, Pena's claims against Ms. Harrison should be dismissed. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (requiring a showing of personal involvement in the constitutional violation to support imposition of liability under § 1983).

Second, Pena's procedural due process claim against Ms. Harrison fails because he had no protected liberty or property interest in working in the LCCF kitchen. *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986); *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996)(recognizing that "prison regulations entitling prisoners to work do not create a constitutional liberty interest because a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'"). To the extent NMCD policies arguably give rise to a protected interest in prison employment generally, they do not give rise to a protected interest in employment in any particular job or continued employment in any particular job. *See Ingram*, 804 F.2d at 597; *Penrod*, 94 F.3d at 1407. The undisputed facts reveal that Pena was offered a job working with Captain Heredia, and he refused to take the position. Pena is currently employed as a pod porter in his housing unit.

Third, Pena's procedural due process claim also fails because he was afforded an adequate post-deprivation remedy. *Smith v. Colo. Dep't of Corrs.,* 23 F.3d 339, 340 (10th Cir.1994)(due process guarantees are satisfied when an adequate, post-deprivation remedy exists). Pena appealed the denial of his employment application through the classification appeal procedure. That procedure afforded him an adequate opportunity to be heard. *See id.* For this reason as well, Pena's Fourteenth Amendment claim against Ms. Harrison should be dismissed.

Similarly, Pena's claim that Ms. Harrison subjected him to cruel and unusual punishment simply by denying him a particular job is not factually or legally tenable. The Eighth Amendment is intended to protect against the unnecessary and wanton infliction of pain and punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). A violation of the Eighth Amendment is shown when a prison official knows of and deliberately disregards a serious risk of harm to an inmate. *See id.* at 106; *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)(holding that the plaintiff's allegations that he was assigned jobs inconsistent with his prior work experience and physical abilities did not state a claim for cruel and unusual punishment); *LaBounty v. Adler*, 933 F.2d 121, 123-24 (2d Cir. 1991)(plaintiff's exclusion from prison's maintenance electrician program did "not even constitute 'punishment' let alone punishment that is 'cruel and unusual'"). "In the work assignment context, prison officials are deliberately indifferent when they knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their health, or which is unduly painful." *Choate v. Lockhart,* 7 F.3d 1370, 1374 (8th Cir.1993)(internal quotation marks and alterations omitted).

Here, the Complaint does not allege Pena's health or safety has been jeopardized as a result of the denial of his employment application. The Complaint does not allege Ms. Harrison acted with deliberate indifference to a serious risk of harm to Pena. Moreover, any such allegation would be factually unsupported, as Ms. Harrison did not personally deny Pena's employment application. In the absence of such facts, Pena's Eighth Amendment claim fails as a matter of law and must be dismissed.

Pena's claims against Ms. Harrison under state law should also be dismissed. Article II, Section 18 of the New Mexico constitution protects against the deprivation of life, liberty or

property without due process of law.  While the New Mexico courts have yet to definitively decide whether individuals might be entitled to more process under state law than under the Fourteenth Amendment, what is clear is that the individual alleging a violation of Article II, Section 18 must demonstrate a protected interest has been impaired.  As discussed herein above, Pena cannot demonstrate he had a protected liberty or property interest in a particular prison job.  Thus, his state law due process claims must be dismissed.

With regard to his claims of cruel and unusual punishment, "[a] comparison of the language of the Eighth Amendment of the United States Constitution and Article II, Section 13 of the New Mexico State Constitution reveals that the two constitutional provisions relating to the prohibition against cruel and unusual punishment are nearly identical in their wording." *State v. Rueda*, 1999-NMCA-033, 126 N.M. 738, 975 P.2d 351, 353.  Proof of deliberate indifference on the part of prison officials appears to be required in order to find a violation of Article II, Section 13.  *See Cordova v. LeMaster*, 2004-NMSC-026, ¶ 8, 136 N.M. 217, 96 P.3d 778 (noting that inmate did not allege New Mexico constitution should interpreted more broadly than United States Constitution and addressing claims of inadequate medical care under federal standard only).  As discussed herein, Pena cannot come forward with evidence to establish deliberate indifference on the part of Ms. Harrison, and Pena's claims against her under state law should be dismissed as well.

**III.     Pena's Federal and State Claims Against Lt. Elizondo Fail on Their Merits.**

The Complaint also alleges Lt. Elizondo violated Pena's Fourteenth Amendment procedural due process rights and subjected Pena to cruel and unusual punishment in violation of the Eighth Amendment when she rejected two inmate informal complaints regarding Pena's employment assignment. (Complaint [doc. 1-1] at ¶¶ 39, 40).  The Complaint further alleges Lt.

Elizondo's actions violated the equivalent provisions of the New Mexico Constitution.  (*Id.*).  These claims are likewise without factual or legal support, and Lt. Elizondo should be dismissed as a party-Defendant herein.

Pena's procedural due process claim against Lt. Elizondo fails because he had no protected liberty or property interest in a particular inmate grievance procedure. "[T]here is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz,* 443 Fed.Appx. 331, 332 (10th Cir.2011) (citing *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994)); *see also Butler v. Brown,* 58 Fed.Appx. 712 (9th Cir.2003)("[A] prisoner has no constitutional right to prison grievance procedures."); *Young v. Gundy,* 30 Fed.Appx. 568, 569–70 (6th Cir.2002) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Boyd,* 443 Fed.Appx. at 332 (citing *Bingham v. Thomas,* 654 F.3d 1171, 1177–78 (11th Cir.2011); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993) (per curiam)). Without a protected liberty or property interest, Pena cannot state a due process claim based on allegations that Lt. Elizondo improperly rejected his informal complaints.

Additionally, Lt. Elizondo did not refuse to hear or improperly reject Pena's informal complaints. As the undisputed facts herein make clear, a determination regarding an inmate's job assignment is characterized as a classification issue, subject to the classification appeal procedure.  Classification issues were specifically excluded from the inmate grievance procedure.  Lt. Elizondo properly rejected Pena's informal complaints, which were submitted through the inmate grievance procedure, because they presented a classification issue and needed to be resolved through the classification appeal process.  Although Pena's second informal complaint contained the word "discrimination," that complaint likewise addressed his job

assignment, a classification issue.  Thus, Lt. Elizondo acted appropriately and in accordance with policy when she rejected Pena's informal complaints.  Regardless of whether Pena had a liberty or property interest in a particular grievance procedure, he cannot establish that Lt. Elizondo failed to afford him all of the process he was due.[1]

Similarly, the law does not recognize Pena's claim that he was subjected to cruel and unusual punishment simply because Lt. Elizondo rejected two of his informal complaints.  Here again, the Eighth Amendment is intended to protect against the unnecessary and wanton infliction of pain.  *Estelle,* 429 U.S. at 102.  The rejection of a written complaint does not constitute punishment of any sort and certainly does not constitute cruel and unusual punishment.  Moreover, the Complaint does not contain allegations from which it may be found that Lt. Elizondo knew of and deliberately disregarded a serious risk of harm to Pena.  In the absence of such facts, Pena's Eighth Amendment claim fails as a matter of law and must be dismissed.[2]

## IV.     Pena's Claim Against Beaird for First Amendment Retaliation Must be Dismissed.

The Complaint alleges Warden Beaird subjected Pena to cruel and unusual punishment and unconstitutional retaliation when he informed Pena he could not work in the kitchen because he would "complain."  (Complaint [doc. 1-1] at ¶ 36).  These claims are likewise without factual or legal support, and Warden Beaird should be dismissed as a party-Defendant herein.

To survive summary judgment, "[a]n inmate claiming retaliation must 'allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'"  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990)); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  The claim of

---

[1] For the reasons discussed in § II., supra, the Court should also dismiss Pena's claims against Lt. Elizondo under Article II, § 18 of the New Mexico Constitution.
[2] For the reasons discussed in § II., supra, the Court should also dismiss Pena's claims against Lt. Elizondo under Article II, § 13 of the New Mexico Constitution.

retaliation fails if the inmate presents "no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions." *Smith*, 899 F.2d at 947. The inmate must also demonstrate the acts of which he complains are sufficient to "chill a person of ordinary firmness from continuing" to complain of constitutional violations by means of litigation or the filing of grievances. *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001), *abrogated on other grounds, Hartman v. Moore*, 547 U.S. 250 (2006).

Warden Beaird denies he ever told Pena he could not work in the kitchen because he would complain. However, assuming for purposes of this Motion that the statement was made, Pena has failed to allege facts from which the Court could find that Warden Beaird had a motive to retaliate against Pena, or that any such motive was the "but for" cause of Warden Beaird's statement. NMCD policy required facility staff to conduct a security review before approving an inmate for work in the kitchen. Based on Pena's serious disciplinary infractions while previously housed at LCCF, security staff made the determination that Pena was not appropriate for placement in a security sensitive position. It was Pena's own misconduct, not his involvement in any protected activity, that caused him to be denied employment in the kitchen.

Additionally, the Complaint does not identify with any degree of specificity the protected conduct that served as the predicate for Warden Beaird's alleged retaliation. The Complaint contains references to Pena's status as a "jailhouse lawyer" and to his prior IPRA requests and grievances, but does not contend any of those activities directly involved Warden Beaird. As a practical matter, Pena's contention is nonsensical: if Warden Beaird's objective was to keep Pena from complaining, the sensible course of action would have been to assign Pena to work in the kitchen as he requested. However, as the undisputed facts make clear, Pena's application for a security sensitive job assignment was denied following a review of his file due to prior

disciplinary infractions that had occurred while he was housed at LCCF. Those infractions, not any retaliatory motive on the part of Warden Beaird, were the "but for" cause of the denial of Pena's request to work in the kitchen. *Smith*, 899 F.2d at 947; *see Peterson*, 149 F.3d at 1144 ("[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison."). Given these legitimate security concerns, Pena cannot demonstrate that Warden Beaird's alleged retaliatory motives led him to deny Pena's job application. *See Peterson*, 149 F.3d at 1144 ("[A]n inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity). Pena's claim against Warden Beaird for First Amendment retaliation fails as a matter of law and must be dismissed.

Pena's claim under the Eighth Amendment against Warden Beaird likewise fails for lack of factual support. Here again, there is no evidence Warden Beaird knew of and deliberately disregarded a serious risk of harm to Pena as a result of his job assignment. The mere fact that Pena was not assigned to his preferred job is insufficient to state a claim for cruel and unusual punishment. *Williams*, 926 F.2d 994; *LaBounty*, 933 F.2d at 123-24. Moreover, Warden Beaird's alleged comment that Pena was not being assigned to the kitchen because he would "complain" is not an objectively, sufficiently serious infraction to give rise to an Eighth Amendment claim. *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995)(rejecting plaintiff's assertion that jailer's sexually suggestive comment was sufficiently serious to give rise to Eighth Amendment claim); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013)(finding that prison officials' verbal harassment about a knit cap did not give rise to an Eighth Amendment violation); *see also Alvarez v. Gonzales,* 155 F. App'x

393, 396 (10th Cir.2005)("Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create terror of instant and unexpected death."). Pena's claim that Warden Beaird violated his Eighth Amendment rights likewise fails as a matter of law and must be dismissed.[3]

**V.     Pena's Claims Against Warden Wrigley Based on His Alleged Failure to Supervise Other Employees Must Be Dismissed.**

Pena alleges Warden Wrigley violated his constitutional rights by failing to supervise Ms. Harrison, Lt. Elizondo, Warden Beaird, and an unidentified employee who failed to process an inmate informal complaint regarding Lt. Elizondo's conduct.  (*Id.* at ¶¶ 33, 34, 37, 38, 41). Section 1983 does not authorize a court to impose liability under a theory of respondeat superior. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "In a § 1983 suit . . . the term 'supervisory liability' is a misnomer" because each official "is only liable for his or her own misconduct." *Id.* at 677. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

Following the Supreme Court's decision in *Iqbal*, much discussion has been undertaken as to the circumstances under which a supervisory employee may be held liable for the unconstitutional acts of a subordinate. *See generally Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010); *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 768 (10th Cir. 2013).  At a minimum, such a claim requires facts to support three elements:  (1) the supervisor was personally involved in the unconstitutional acts; (2) a causal connection between the supervisor's involvement and the unconstitutional acts; and (3) proof that that the supervisor acted with the requisite state of mind. *Schneider*, 717 F.3d at 767.

---

[3] For the reasons discussed in § II., supra, the Court should also dismiss Pena's claims against Warden Beaird under Article II, § 13 of the New Mexico Constitution.

Here, the Complaint does not allege facts to support the imposition of supervisory liability against Warden Wrigley.  As argued above, Ms. Harrison, Lt. Elizondo, and Warden Beaird did not violate Pena's constitutional rights.  Pena claims an unknown employee of GEO violated his rights by failing to process or respond to a third informal complaint that was addressed to Lt. Elizondo's alleged misconduct.  However, an inmate has no constitutionally protected right to any particular grievance process.  The failure of a prison official to respond to a grievance may entitle an inmate to a finding that he has exhausted administrative remedies with respect to that particular claim, but it does not give rise to a finding of additional substantive constitutional violations.  To the extent Pena seeks to assert Eighth Amendment claims against this employee, his claims must be dismissed because a court cannot determine deliberate indifference if the plaintiff has failed to identify the alleged culprit.  *See K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997)(dismissing claim for cruel and unusual punishment due to plaintiff's failure to "point the finger at any specific prison guards").  As no employee of GEO violated any of Pena's constitutional rights, there is no basis upon which to impose supervisory liability against Warden Wrigley.

Pena's claims against Warden Wrigley also fail because the Complaint does not allege Warden Wrigley acted with a culpable state of mind.  *Schneider*, 717 F.3d at 767.  Instead, the Complaint alleges Warden Wrigley offered to assist Pena and informed Pena that he could "send a note to Warden Wrigley at any time." (Complaint [doc. 1-1] at ¶ 23).  Far from supporting his claims against Warden Wrigley, Pena's own allegations establish an intent to help him, not deliberate indifference to Pena's health and safety.  Pena's claims against Warden Wrigley fail under *Iqbal* and *Schneider* and must be dismissed.[4]

---

[4] For the reasons discussed in § II., supra, the Court should also dismiss Pena's claims against Warden Beaird under Article II, § 13 of the New Mexico Constitution.

## VI. Pena's Claims Against GEO, and His Official Capacity Claims Against Ms. Harrison, Lt. Elizondo, Warden Beaird and Warden Wrigley Must Be Dismissed.

A plaintiff seeking to impose § 1983 liability upon a corporation or upon an officer acting in his or her official capacity must identify the policy or custom that caused the injury. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Herrera v. County of Santa Fe*, 213 F.Supp.2d 1288, 1291, n. 2 (D.N.M. 2002)(private corporation performing municipal function may not be held vicariously liable for its employee's actions under § 1983). Thus, to establish liability on the part of GEO for the alleged violation of Pena's constitutional rights, Pena must prove: (1) a GEO employee violated the constitution and (2) a GEO policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. County Bd. of County Commrs.*, 151 F.3d 1313, 1316 (10th Cir. 1998).

As discussed above, Pena cannot establish any GEO employee violated his constitutional rights. Moreover, the Complaint contains no allegations regarding any policy or custom of GEO that caused injury to Pena. Although Pena alleges GEO and Warden Wrigley failed to supervise employees, a lack of supervision alone is insufficient to give rise to municipal liabilityunder § 1983. *See Estate of Stevens ex rel. Collins v. Bd. of Comm'rs of Cnty. of San Juan*, 2014 WL 5302961, at *6 (D.N.M. Oct. 16, 2014). In the absence of allegations of a policy or custom, Pena has failed to state a claim for relief against GEO, and his claims against it should be dismissed. *See e.g., Ames v. Miller*, 247 Fed.Appx. 131, 2007 WL 2558101 at * 2 (10th Cir. Sept. 6, 2007) (unpublished)(affirming district court's *sua sponte* dismissal of plaintiff's § 1983 claim against city where plaintiff failed to allege a custom or policy of the municipality); *Douglas v. Beaver County School Dist. Bd.*, 82 Fed.Appx. 200, 2003 WL 22872699 at * 1-2 (10th Cir. Dec. 5, 2003) (unpublished)(same). Moreover, Pena's failure to allege facts regarding a policy or

custom of GEO is likewise fatal to his claims against the individual Defendants in their official capacities. *Myers*, 151 F.3d at 1316.

WHEREFORE Defendants respectfully request the Court enter an Order granting their Motion for Summary Judgment in its entirety, dismissing all of Pena's claims against them with prejudice, and awarding any such other and further relief as the Court deems just and proper.

> Respectfully submitted,
>
> YENSON, ALLEN & WOSICK, P.C.
>
> */s/ April D. White*
> April D. White
> *Attorneys for Defendants GEO Group, Inc.,*
> *Wrigley, Beaird, Elizondo, and Harrison*
> 4908 Alameda Blvd NE
> Albuquerque, NM  87113-1736
> (505) 266-3995
> awhite@ylawfirm.com

I hereby certify that a true copy of the foregoing pleading was mailed to:

    Solomon Pena, #70190
    Lea County Correctional Facility
    6900 W. Millen Dr.
    Hobbs, NM 88244
    ***Plaintiff pro se***

on this 31st day of March, 2015.

*/s/ April D. White*
April D. White