FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

2015 JUN -4 PM 3:33

CLERK-LAS CRUCES

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

SOLOMON PENA,

PLAINTIFF,

VS.                                               2:15-CV-00230-LH-WPL

THE GEO GROUP, INC., et al.,

DEFENDANTS.

PLAINTIFF'S MEMO IN OPPOSITION TO THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT FILED 31 MAR 2015

1. Comes now the pro se plaintiff Solomon Pena, and he wishes to enter into the record this memo in opposition to the defendants motion for summary judgement. Plaintiff asks this Court to deny the defendants motion. In support, plaintiff states:

2. The Statement of Undisputed Facts is not undisputed. It is a statement of disputed assertions. (In the motion for summary judgment.)

3. Paragraphs 1-3 are true.

4. Concerning paragraph 4, if defendant Harrison does not have the first two applications the plaintiff submitted, it is what it is. However, as stated in the Complaint, plaintiff submitted three (total) applications.

5. Paragraph 5. is true.

6. The policy or custom mentioned in paragraph 6 is one of the things concerning GEO/NMCD that the prisoners don't get to know. So the plaintiff can not comment on if it is true or not.

7. True. Plaintiff was housed at LCCF from July 2009 - 2012 Nov. (In reference to paragraph 7.)

8. Paragraph 8 is true.

9. Paragraph 09 is partially false. "While employed in the LCCF kitchen, Pena was found to be in possession of an 8-inch homemade shank." In Feb 2010 the plaintiff was caught with a shank in LCCF housing unit 2 D-space. (A shank is a knife or stabbing device). It had absolutely nothing to do with the kitchen, though. The plaintiff was not working in the kitchen at the time he was caught with the shank, he was a library clerk in the prison library. The shank was the lever one must depress to make an office chair go up and down, broke off one of the chairs in the library. The plaintiff wanted to include a copy of the complete disciplinary record for this incident, because it will prove that the defendants put false information in their motion for summary judgment. But plaintiff Pena could not get it in time to meet the 25 May 2015 deadline. ✱

10. When plaintiff got caught with it he was segregated for approx 80 days and then placed back into General Population. Plaintiff obviously was not perceived as a threat because the prison authorities easily could have placed the plaintiff in Level VI in Santa Fe, N.M. for getting caught with the shank. (Level VI is the highest security placement NMCD provides.)

11. Also, after the 80 day period of segregation, when the plaintiff was back in General Population, the prison authorities placed him into the kitchen to work. This was after being caught with the shank. The plaintiff obviously was not a security risk. Same thing here. Plaintiff will get the chrono putting him back into the kitchen after the shank incident entered into evidence ASAP.

12. In reference to paragraph 10: This statement is true. But the defendant's are presenting it in a misleading manner. All persons, including persons in prison, are constitutionally entitled to legal self-defense if one's body is attacked. In July 2010 the plaintiff was serving food on to trays in a "chow line" at LCCF kitchen.

ANOTHER PRISONER, INTENTIONALLY AND WITHOUT THE PLAINTIFF PROVOKING HIM IN ANY WAY, THREW BUTTER AT THE PLAINTIFF AND THEN HEAD-BUTTED THE PLAINTIFF.

13. ONLY AFTER GETTING HEAD-BUTTED DID THE PLAINTIFF RETURN FIRE, AND EVEN THEN, THE PLAINTIFF ONLY USED THE MINIMUM AMOUNT OF FORCE NECESSARY TO GET THE ATTACKER TO STOP ATTACKING. THE PLAINTIFF EYE GOUGHED THE ATTACKER AND THEN SHORTLY THEREAFTER THE "REACT TEAM" CAME RUNNING INTO THE KITCHEN AND SECURED THE SCENE.

14. THE WHOLE INCIDENT WAS RECORDED BY A DIGITAL CAMERA IN THE KITCHEN. THE DEFENDANTS STILL HAVE THIS FOOTAGE IN THEIR CUSTODY. THE PLAINTIFF WOULD LIKE THE COURT TO COMMAND THE DEFENDANTS TO PRODUCE THE FOOTAGE SO THE COURT CAN SEE IT. IT WILL SHOW THE OTHER PRISONER INITIATING THE WHOLE ACTION.

15. BECAUSE OF THE INCIDENT THE PLAINTIFF WAS FIRED FROM THE LCCF KITCHEN.

16. PARAGRAPH 11: "BASED ON THESE PRIOR INCIDENTS OF MISCONDUCT, SECURITY PERSONNEL AT LCCF DENIED PENA'S APPLICATION FOR EMPLOYMENT IN THE KITCHEN." THIS IS NOT TRUE. DEFENDANT BEAIRD CLEARLY STATED ON 03 OCT 2014 THE PLAINTIFF COULD NOT WORK IN THE KITCHEN BECAUSE THE PLAINTIFF IS A KNOWN COMPLAINER. PARAGRAPH 11 IS ~~A~~ THE BEST DEFENSE A CLEVER ATTORNEY COULD CREATE BECAUSE THE PLAINTIFF SUED OVER THIS KITCHEN ISSUE.

17. PARAGRAPH 12 IS TRUE.

18. IN REFERENCE TO PARAGRAPH 13: THE PLAINTIFF DID FILE AN INMATE CLASSIFICATION APPEAL. THE DEFENDANTS INCLUDED IT AS EXHIBIT L OF THEIR MOTION FOR SUMMARY JUDGMENT.

19. IN REFERENCE TO PARAGRAPHS 13-14: NMCD POLICY 150500. E. 2.d. DOES NOT PERMIT THE PLAINTIFF TO GRIEVANCE ANY MATTER INVOLV-

ING A CLASSIFICATION DECISION. SEE ✱✱   THE SAME POLICY DOES PERMIT THE PLAINTIFF TO GRIEVANCE ANY EMPLOYEE MISCONDUCT, WHICH THE POLICY CALLS "INDIVIDUAL EMPLOYEE ACTIONS." (150500.E.1.b.)   (THIS IS OUT OF 150500 AS IT STOOD IN AUGUST-SEPT 2014. IT HAS SINCE BEEN REVISED.)

20. THE SUBJECT OF THE FIRST INFORMAL COMPLAINT WAS NOT A CLASSIFICATION DECISION, THE SUBJECT WAS THAT THE CONTRACT BETWEEN GEO AND LEA COUNTY AND THE CONTRACT BETWEEN LEA COUNTY AND NMCD WERE NOT BEING EXECUTED AS THEY WERE WRITTEN.

21. THE SUBJECT OF THE SECOND INFORMAL COMPLAINT WAS NOT A CLASSIFICATION DECISION, THE SUBJECT WAS DISCRIMINATION, AND IT WAS CLEARLY STATED IN THE INFORMAL COMPLAINT.

22. PARAGRAPH 15 IS TRUE.

23. PARAGRAPH 16 IS COMPLETELY FALSE, AS IS PARAGRAPH 18 OF THE AFFIDAVIT OF JOHN BEAIRD. AS STATED IN THE COMPLAINT, J. W. BEAIRD (PARAGRAPH 30 OF THE COMPLAINT) SPOKE "CAUSE YOU'LL COMPLAIN!" TO THE PLAINTIFF WHEN THE PLAINTIFF ASKED WHY HE COULD NOT WORK IN THE LCCF KITCHEN.

24. IN REFERENCE TO PARAGRAPH 17: THIS PARAGRAPH IS NOT TRUE, THE PLAINTIFF'S KITCHEN APPLICATION WAS DENIED BECAUSE OF HIS CONSTITUTIONALLY PROTECTED ACTIVITIES.

25. [PARAGRAPH 18] THIS PARAGRAPH IS ALSO FALSE. THE PLAINTIFF WAS NOT OFFERED EMPLOYMENT WORKING UNDER CAPTAIN HEREDIA, THE PLAINTIFF WAS LAWFULLY COMMANDED TO WORK UNDER CAPT HEREDIA AS A CAPTAINS CREW EMPLOYEE. THE PLAINTIFF WAS SERVED AND SIGNED A "CHRONO" COMMANDING HIM TO WORK CAPTAINS CREW. ~~SEE EXHIBIT~~ WASN'T ABLE TO GET IT IN TIME. THE CHRONO STATED THE DUTY HOURS AND THE JOB TITLE, BUT DID NOT STATE WHERE TO REPORT TO. ON THE FIRST DAY OF DUTY THE

PLAINTIFF "STOOD BY" IN HIS POD TO GET CALLED OUT TO WORK. AT 0945 HRS ON THAT DATE (22 SEP 2014) THE PLAINTIFF WAS SUMMONED TO CAPT HEREDIA'S OFFICE. THERE WAS NO FAILURE TO REPORT.

26. ONCE AT CAPT HEREDIA'S OFFICE, CAPT HEREDIA EXPLAINED WHAT THE PLAINTIFF'S DUTIES WOULD BE. THE PLAINTIFF WORKED THE JOB FOR TWO FULL WORK WEEKS. ON FRI OCT 03, 2014 THE PLAINTIFF SPOKE WITH DEFENDANT BEAIRD ABOUT THE WHOLE CAPTAINS CREW SITUATION AND DEFENDANT BEAIRD TOLD THE PLAINTIFF THAT HE (PLAINTIFF) WOULD BE REMOVED FROM CAPTAINS CREW, EFFECTIVE IMMEDIATELY. THE NEXT WORK WEEK (6-10 OCT 2014) LORENA BRITO SERVED THE PLAINTIFF WITH A "CHRONO" REMOVING HIM FROM CAPTAIN'S CREW.

27. NOTE THAT THE CAPTAIN'S CREW JOB WAS CREATED SOLELY FOR PLAINTIFF PENA. THERE WAS NO OTHER PRISONERS ASSIGNED TO DAY SHIFT CAPTAIN'S CREW THAT THE PLAINTIFF COULD ASK WHERE TO GO. ALSO, WHEN DEFENDANT HARRISON SERVED THE CHRONO ON THE PLAINTIFF TO WORK CAPTAIN'S CREW SHE NEVER TOLD THE PLAINTIFF WHO TO REPORT TO OR WHERE TO REPORT TO.

28. THERE WAS A NIGHT SHIFT CAPTAIN'S CREW. (GRAVEYARD.) BUT NO DAY SHIFT PRIOR TO THE PLAINTIFF'S APPOINTMENT.

29. CAPT HEREDIA FILED AN INMATE MISCONDUCT REPORT AGAINST THE PLAINTIFF FOR THE PLAINTIFF BEING LATE ON THAT FIRST DAY OF DUTY. PLAINTIFF APPEALED THE FINDING OF GUILT ALL THE WAY TO NMCD HEADQUARTERS IN SANTA FE, N.M. NMCD HEADQUARTERS KEPT HIM GUILTY. THE MATTER IS NOW A TITLE 42 USC § 1983 PETITION IN THE SANTA FE COUNTY DISTRICT COURT- FIRST JUDICIAL DISTRICT: PENA V. THE GEO GROUP INC., et al. D-101-CV-2015-00525. THE GEO GROUP'S AGENTS CAN NOT PUNISH A PRISONER FOR NOT BEING SOMEWHERE THE PRISONER WAS NEVER LAWFULLY COMMANDED TO BE.

30. Paragraph 22 is true.

31. Paragraph 23 is true. The plaintiff submitted an application on 16 Mar 2015 to defendant Harrison to work kitchen graveyard, it was cc'd to defendant Weigley. To this date it is unanswered. The plaintiff has sent two letters, since 16 Mar 2015 to GEO headquarters in Boca Raton, FL., asking them to command LCCF to answer the 16 Mar 2015 application. Those two letters are, to this date, unanswered.

32. Summary judgement is not appropriate at this time. There is a genuine issue as to the material facts. Considering everything that the plaintiff has entered into the record a reasonable juror could find that plaintiff Pena was denied employment in the LCCF kitchen in retaliation for his constitutionally protected activities. ("A genuine issue exists when the nonmoving party presents sufficient evidence for a jury to return a verdict in his favor.") Clemmons v. Bohannon, 956 F.2d 1523 (10th Cir 1992).

33. Everything entered into the record combined shows that the defendants are extremely biased against the plaintiff. The record also supports that the plaintiff is a prisoner who firmly asserts his Constitutional rights, privileges and immunities with the prison authorities.

34. The prison authorities want the prisoner's to be stupid, uneducated and uninformed (and drug-addicted) so they can do whatever they want to the prisoner's. Such prisoner's are very easily controlled. When a prisoner like the plaintiff stands up against wrongful practices of the prison authorities, they (the prison authorities) hate it with a passion. The prison authorities (hereinafter "P.A.") use a variety of tactics — legal and illegal — to suppress such lawful dissent. As stated in previous pleadings, the pl-

aintiff has had to engage another prisoner in hand to hand combat because the LCCF P.A. manipulated the guy into attacking the plaintiff.

35. One who is not a "follower" and who is capable of independent thought and who does not use drugs is the most undesireable prisoner for the P.A., because the described prisoner is capable of defending himself the right way; with a pen.

36. The plaintiff can prove through the camera footage that he was alone in Def Beaird's (Plaintiff and Beaird) office on 03 Oct 2014. The informals that plaintiff and Beaird both signed on 03 Oct 2014 is also proof the two were together on that date. They (the informals) were included as Exhibit 1 in the 2015 Apr 10 filing. That combined with the defendant's typing up false information in their pleadings concerning the plaintiff's claims and "draw[ing] all inferences from the facts in favor of the non moving party (Clemmons v. Bohannon, 956 F.2d 1523 (10th Cir 1992)) presents "a genuine issue" (Clemmons).

37. Response to Argument and Authority I.:

38. "... Ms. Harrison did not make the decision to deny Pena's job application." Defendant Harrison still contributed to the plaintiff being retaliated against by executing the action she did.

39. Paragraph two, page 06: "Pena ... had no protected liberty or property interest in working in the LCCF kitchen." True, however, the defendants cannot retaliate against the plaintiff by denying his kitchen application in retaliation for plaintiff's constitutionally protected activities.

> Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.... Howe-

ver, an inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

Fogle v. Pierson, 435 F.3d 1252 (10th Cir. 2006)

40. Page 06, paragraph two: "The undisputed facts reveal that Pena was offered a job working with Captain Heredia, and he refused to take the position." This is a complete lie. And it can be proven that it is a lie. In addition to the information plaintiff wrote in paragraphs 25-29 of this pleading (addressing the false info) plaintiff asks for the court to look at the two "chrono's", which are included as exhibit *** & . They clearly show that the plaintiff worked ~~under~~ Captain's Crew for two work weeks, Mon-Fri and then another Mon-Friday. On 2014 Oct 03, during the same conversation when defendant Beaird told the plaintiff that he could not work in the kitchen because he is a known complainer is when defendant Beaird told the plaintiff that he was, effective immediately, removed from Captain's Crew.

41. If the quoted text in this pleading's paragraph 40 was true, the LCCF STAFF would have stopped awarding EMD (earned meritorious deductions, aka "good time") to the plaintiff and stopped his pay and filed an Inmate Misconduct Report against the plaintiff for failure to obey a lawful order. Stopping the EMD and pay is permitted by N.M. State Law for any prisoner who refuses to perform labor. For the THIRD AND fourth quarter of 2014 (JUL-SEP OCT-DEC) the plaintiff was awarded maximum good time. See exhibit ___: 30 day award for Oct and Sept 2014. The quoted text in this pleading's paragraph 40 is a complete lie. SAME HERE, PLAINTIFF WILL WORK ON GETTING THE GOOD TIME AWARD RECORD ENTERED INTO THIS RECORD.

42. PARAGRAPH 3, PAGE 06: "THIRD, PENA'S PROCEDURAL DUE PROCESS CLAIM ALSO FAILS BECAUSE HE WAS AFFORDED AN ADEQUATE POST-DEPRIVATION REMEDY." THE CLASSIFICATION APPEAL THAT THE PLAINTIFF ~~CARRI~~ EXECUTED WAS NOTHING MORE THAN HIM FULFILLING THE REQUIREMENTS OF TITLE 42 USC §1997e (HEREINAFTER "PLRA").

43. NO ROMAN NUMERAL II WAS LISTED.

44. "III. PENA'S FEDERAL AND STATE CLAIMS AGAINST LT. ELIZONDO FAIL ON THEIR MERITS."

45. DEFENDANT ELIZONDO DID REFUSE TO HEAR THE TWO SUBJECT INFORMAL COMPLAINTS IN VIOLATION OF NMCD'S INMATE GRIEVANCE POLICY, 150500. THIS VIOLATES THE PLAINTIFF: "AS AN INDIVIDUAL IN THE CUSTODY OF THE STATE, NOBLE RETAINS HIS RIGHTS TO FREE SPEECH, AND IS ENTITLED TO PETITION THE STATE FOR REDRESS OF GRIEVANCES." NOBLE V. SCHMITT, 87 F.3d 157, 162 (6TH CIR 1996).

46. A CAREFUL READING OF THE GRIEVANCE POLICY WILL SHOW WHAT DEFENDANT ELIZONDO DID WRONG. THE POLICY, AS IT STOOD AT THAT TIME STATED: "THE FOLLOWING MATTERS ARE NOT GRIEVABLE BY INMATES: ANY MATTER INVOLVING A CLASSIFICATION DECISION. A SEPARATE APPEAL PROCESS IS PROVIDED BY DEPARTMENT POLICY FOR CLASSIFICATION ACTIONS...." ~~OR~~ SEE PAR 67. ~~EXHIBIT~~ ~~(TWO PAGES.)~~ THE FIRST REJECTED INFORMAL COMPLAINT, ~~EXHIBIT~~, THE SUBJECT OF IT WAS THAT THE CONTRACT BETWEEN THE GEO GROUP, INC AND LEA COUNTY, N.M. WAS NOT BEING EXECUTED AS IT WAS WRITTEN, NOT ANY CLASSIFICATION DECISION.

47. THE SECOND INFORMAL COMPLAINT THAT DEFENDANT ELIZONDO REJECTED, ~~EXHIBIT~~, THE SUBJECT OF IT WAS NOT ANY CLASSIFICATION DECISION, THE SUBJECT OF IT, COPIED DOWN HERE VERBATIM OUT OF THE INFORMAL COMPLAINT, WAS: "THIS IS A COMPLAINT OF DISCRIMINATION. INMATES WHO ARRIVED HERE AFTER ME AND APPLIED TO THE KITCHEN AFTER ME HAVE BEEN PLACED IN THE

KITCHEN. THIS IS UNFAIR TO ME," DEFENDANT ELIZONDO REJECTED IT IN VIOLATION OF 150500 INMATE GRIEVANCES. THE PLAINTIFF IS PERMITTED TO GRIEVANCE HIM GETTING DISCRIMINATED AGAINST.

48. "IV. PENA'S CLAIM AGAINST BEAIRD FOR FIRST AMENDMENT RETALIATION MUST BE DISMISSED:"

49. "WARDEN BEAIRD DENIES HE EVER TOLD PENA HE COULD NOT WORK IN THE KITCHEN BECAUSE HE WOULD COMPLAIN." (PAGE 11, PARAGRAPH 2). THIS IS A COMPLETE AND ABSOLUTE LIE. BEAIRD WAS SO FURIOUS, ON 03 OCT 2014, HE HALF JUMPED OUT OF HIS CHAIR WHEN HE YELLED IT AT THE PLAINTIFF. BEAIRD WAS ALREADY AGITATED BECAUSE HE HAD JUST SPOKEN WITH THE PLAINTIFF ABOUT TEN INFORMAL COMPLAINTS THAT PLAINTIFF HAD FILED, WHICH WERE INCLUDED AS EXHIBIT 1 OF THE 10 APR 2015 FILING. (PLEADING.)

50. "...PENA HAS FAILED TO ALLEGE FACTS FROM WHICH THE COURT COULD FIND THAT WARDEN BEAIRD HAD A MOTIVE TO RETALIATE AGAINST PENA, OR THAT ANY SUCH MOTIVE WAS THE 'BUT FOR' CAUSE OF WARDEN BEAIRD'S STATEMENT." (PARAGRAPH 2, PAGE 11.)

51. ALSO; "ADDITIONALLY, THE COMPLAINT DOES NOT IDENTIFY WITH ANY DEGREE OF SPECIFICITY THE PROTECTED CONDUCT THAT SERVED AS THE PREDICATE FOR WARDEN BEAIRD'S ALLEGED RETALIATION." (PAGE 11, PARAGRAPH 3.) PARAGRAPHS 27, 17 AND 23 OF THE PLAINTIFF'S COMPLAINT STATE THE PLAINTIFF'S FILING OF HIS OWN IPRA REQUESTS AND OF HIM HELPING OTHERS FILE THEIR IPRA REQUESTS. PARAGRAPH 24 STATES THAT THE PLAINTIFF IS SOMEWHAT KNOWN FOR JAILHOUSE LAWYERING AND GRIEVANCES AND HELPING OTHERS FILE GRIEVANCES.

52. If it is not superclear the plaintiff apologizes. But, it is ~~clearly~~ stated in the Complaint.

> [A]llegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers,...
>
> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972)

53. "If Warden Beaird's objective was to keep Pena from complaining, the sensible course of action would have been to assign Pena to work in the kitchen as he requested." (Page 11, paragraph 03.) On 06 Sep 2014, as stated in paragraph 23 of the complaint, defendants Wrigley and Beaird spoke to plaintiff in the housing 3 D-space. At that time, when the three persons were discussing the kitchen job placement, defendant Wrigley told the plaintiff that if he was placed into the kitchen he would probably write one grievance every day.

54. "Given these legitimate security concerns, Pena cannot demonstrate that Warden Beaird's alleged retaliatory motives led him to deny Pena's job application." (Page 12, paragraph 01.) There were no legitimate security concerns, it was a classic case of

First Amendment retaliation. When the plaintiff left LCCF in Nov 2012 he was taken to the GEO prison in Santa Rosa, N.M. A part of the time the plaintiff was housed there he worked kitchen graveyard. From there the plaintiff was taken to the Level III NMCD operated prison in Las Cruces, N.M. The entire time the plaintiff was housed at the Las Cruces prison he worked kitchen graveyard. ~~See exhibit 9~~. The LCCF shank inmate misconduct report and the LCCF kitchen legal self defense inmate misconduct report (fight) was known to the Santa Rosa and Las Cruces prison staff, they obviously did not perceive the plaintiff as a risk because they let plaintiff work kitchen graveyard.

55. Plaintiff was housed at the Las Cruces prison from Oct 24, 2013 to his 12 Jun 2014 arrival at LCCF.

56. Note that at the Santa Rosa GEO prison the plaintiff also worked as a library clerk.

57. "V. Pena's claims against Warden Wrigley based on his alleged failure to supervise other employees must be dismissed:"

58. Page 14, paragraph 1: "Here, the complaint does not allege facts to support the imposition of supervisory liability against Warden Wrigley." Yes it does. Defendant Wrigley knew the plaintiff was being violated, and then he sent a memo to defendant Harrison commanding her to assign the plaintiff to Captain's Crew, not the kitchen. The complaint states in paragraph 23 that on 06 Sep 2014 Wrigley, Beaird and plaintiff spoke in person, for approx 15 minutes. Verbatim out of the complaint: "Mentioned in the conversation was the plaintiff's firm assertion that plaintiff being not placed (appointed) on kitchen graveyard was discrimination and also retaliation for the firm assertion of his constitutional rights, privileges and immunities."

59. Wrigley was briefed by plaintiff on 06 Sep 2014 and did not fix the situation, violating the plaintiff's rights. ("A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. 1983 by directly participating in

the infraction. Supervisory officials are considered to have been 'personally involved' in a violation if they: (1) fail to remedy the wrong after learning of it through a report or appeal;") (Shabazz v. Vacco, 1998 WL 901737.) (S.D.N.Y. 1998)

60. After being briefed by Plaintiff on 06 SEP 2014 defendant Wrigley sent a memo to defendant Harrison commanding her to place the plaintiff on Captains Crew. See paragraph 27 of the complaint.

61. "VI. Pena's Claims Against GEO, and His Official Capacity Claims Against Ms. Harrison, Lt. Elizondo, Warden Beaird and Warden Wrigley Must Be Dismissed."

62. Page 15, paragraph 01: "A plaintiff seeking to impose § 1983 liability upon a corporation or upon an officer acting in his or her official capacity must identify the policy or custom that caused the injury."

63. ("The term 'policy' generally implies a course of action consciously chosen from among various alternatives.") (City of Oklahoma v. Tuttle, 471 U.S. 808 (1985).) The course of action that caused the injury was the retaliatory denial of the kitchen application and defendant Elizondo's wrongful decision to refuse to hear the Informals. The various alternatives were to appoint the plaintiff kitchen grave yard.

64. ✳ From paragraph 09. Plaintiff Pena will still attempt to get the Disciplinary Record for the FEB 2010 shank incident entered into the record. It will prove April D. White typed false info in her Motion for Summary Judgment.

65. ✳✳ From paragraph 19: Policy available at http://corrections.state.nm.us/policies/docs/cd-150500.pdf.

66. ✳✳✳ From paragraph 40: Plaintiff wasn't able to get the two chronos in time to meet the deadline. Plaintiff will work on getting them into the record.

67. This policy can be read at the web address in par 65.

68. To this date the plaintiff has not been appointed kitchen

GRAVEYARD. THE SECURITY DENIAL EXCUSE IS JUST NOT VALID. THERE ARE PRISONERS WORKING IN THE LCCF KITCHEN THAT HAVE STABBED PEOPLE, THE GEO GROUP KNOWS IT BECAUSE IT IS IN THEIR FILE, AND THEY WORK IN THERE. PLAINTIFF PENA HAS NOT COMMITTED ANY SO VIOLENT ACTS DURING HIS INCARCERATION.

69. PLEASE DENY THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. THE PLAINTIFF SWEARS THE INFO IN THIS PLEADING TO BE TRUE UNDER PENALTY OF PERJURY, USC 28 § 1746 AND 18 § 1621.

_____
SOLOMON PENA.
6900 W. MILLEN DR.
HOBBS, N.M. 88244
2015 MAY 20

CERTIFICATE OF SERVICE: THE FOREGOING PLEADING WAS MAILED TO LISTED PARTIES ON LISTED DATE.
- APRIL D. WHITE, ESQ. 4908 ALAMEDA BLVD. N.E. ALB., N.M. 87113.
- U.S. DISTRICT COURT. DISTRICT OF N.M. 100 N. CHURCH ST. STE 280. LAS CRUCES, N.M. 88001.

_____
SOLOMON PENA. 2015 MAY 20

