IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOLOMON PENA,

      Plaintiff,

v.                                                                                    CV 15-230 LH/WPL

THE GEO GROUP, INC.,
JEFF WRIGLEY, J.W. BEAIRD,
LIZA ELIZONDO, and KATIE HARRISON,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      The Defendants filed a motion for summary judgment on all of Plaintiff Solomon Pena's claims on March 31, 2015. (Doc. 4.) After briefing was completed on the Defendants' motion for summary judgment, Pena filed a surreply without leave of Court (Doc. 15) and a Rule 56(d) request (Doc. 16). For the reasons explained below, I recommend that the Court grant the Defendants' motion for summary judgment, deny Pena's Rule 56(d) request, and dismiss this case with prejudice.

**BACKGROUND**

      Pena was transferred to the Lea County Correctional Facility ("LCCF") in June 2014. LCCF is a private prison facility operated by The Geo Group, Inc. ("GEO"), pursuant to a contract with Lea County and is required to comport with all New Mexico Corrections Department policies and procedures regarding inmate employment. Upon arrival at LCCF, Pena applied to work the graveyard shift at the prison kitchen. Pena had worked in the kitchen at two previous corrections facilities. Pena was previously housed at LCCF from mid-2009 through

late-2012. During that time, Pena worked in the kitchen and in the library. At some point during his first stay at LCCF, Pena was found with a shank. Pena also got into a fight with another inmate while working in the kitchen. All of Pena's 2014 applications to work the kitchen graveyard shift at LCCF were denied. The Defendants assert that Pena's applications to work the graveyard shift at the LCCF kitchen were denied in 2014 because of his prior conduct at the facility and because he posed a security threat. On October 3, 2014, Security Warden J.W. Beaird yelled that his application was denied because Pena would just complain about working in the kitchen.[1] The parties agree that Pena exhausted the available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2012).

Pena brought multiple claims of cruel and unusual punishment in violation of the Eighth Amendment and the New Mexico Constitution, procedural due process violations contrary to the Fourteenth Amendment and the New Mexico Constitution, and retaliation in violation of the First Amendment. The Court entered a Memorandum Opinion and Order on August 28, 2015, detailing the basis for Pena's complaint and dismissing with prejudice Pena's federal claims in Counts 1, 2, 3, 5, 6, 7, 8, and 9, and dismissing with prejudice Pena's Eighth Amendment claim in Count 4. (Doc. 18.) There remain claims of procedural due process violations and cruel and unusual punishment arising under the New Mexico Constitution in Counts 1, 2, 3, 4, 5, 6, 7, 8, and 9, and a First Amendment claim in Count 4.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The record and all of its reasonable inferences must be viewed in the light most

---

[1] For the purposes of this motion, the Defendants assume that this statement was made. I will do the same.

favorable to the nonmovant. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

While the moving party bears the burden of showing that there are no genuine disputes of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331. Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in an admissible form at trial, such as live testimony. *Id.*; *see* FED. R. CIV. P. 56(c)(4). In providing factual support for a summary judgment motion, a party may provide the Court with an affidavit or declaration, provided that such a document is "made on personal knowledge, set[s] out facts that would be admissible in evidence,

and show[s] that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. at 56(c)(4).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* report is also treated as an affidavit, and this report can be used in determining whether to grant summary judgment. *Id.* at 1110-11 (citations omitted). A bona fide factual dispute exists even when a pro se plaintiff's factual allegations that are in conflict with the defendant's affidavits are less specific or well-documented than the contentions of the defendant. *See Hall*, 935 F.2d at 1109. Conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact." (quotation omitted)); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("We have long held that conclusory allegations without specific supporting facts have no probative value." (quotation omitted)).

Pena proceeds pro se. As with all pleadings filed by pro se individuals, the Court must liberally construe the allegations contained in Pena's pleadings. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards used for pleadings drafted by counsel. *Id.*

## DISCUSSION

The sole remaining federal claim in this case is for First Amendment retaliation by Beaird. The allegedly retaliatory conduct is Beaird's statement that Pena could not work the

graveyard shift in the kitchen because he would complain and Beaird's apparent decision declining to order that Pena be hired for that shift. I recommend that the Court dismiss this claim with prejudice because Pena failed to establish a retaliatory motive. I further recommend that the Court exercise its supplemental jurisdiction over the remaining state law claims and likewise dismiss those claims—brought under the state analogs to federal constitutional provisions—with prejudice.

### I. First Amendment Retaliation

The law is clear that prison officials may not retaliate against an inmate based on that inmate's exercise of his constitutional rights. *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006). This is true even if the action, taken for a different reason, would have been permissible. *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990). To succeed on his First Amendment retaliation claim, Pena must show that: 1) he was engaged in constitutionally protected activity, 2) Beaird's actions cause him to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in that activity," and 3) Beaird's adverse action was substantially motivated as a response to Pena's exercise of constitutionally protected conduct. *Poole v. Cty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006); *see also Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (using the same formula for analyzing First Amendment retaliation claims); *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999) (same); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (same).

#### A. Constitutionally Protected Conduct

The Defendants argue that Pena failed to "identify with any degree of specificity the protected conduct" that underlay the allegedly retaliatory conduct. (Doc. 4 at 11.) I disagree.

While Pena attempted to argue in the Complaint that "[c]omplaining is constitutionally privileged," he provided additional details in further filings. (Doc. 1 Ex. 1 at 7.) Pena filed an Inspection of Public Records Act request in September 2014, after his application to work the graveyard shift was denied. Pena then filed an informal complaint about the status of his application; a second informal complaint about the status of the contracts between LCCF, GEO, and the State of New Mexico; and a third informal complaint against Liza Elizondo for discrimination. Furthermore, Pena claims, and the Defendants agree, that he filed public records requests, helped other inmates file public records requests, and filed inmate grievances.

Several circuits have held that filing administrative appeals, including inmate grievances, is included in a prisoner's First Amendment right to petition the government for the redress of grievances. *See Fogle*, 435 F.3d at 1264; *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989); *Wildberger v. Bracknell*, 869 F.2d 1467 (11th Cir. 1989); *Wolfel v. Bates*, 707 F.2d 932 (6th Cir. 1983); *see also Hines v. Gomez*, 853 F. Supp. 329, 331 (N.D. Cal. 1994). Pena specifically identified multiple instances of protected conduct that he claims collectively resulted in the alleged retaliation. Accordingly, Pena satisfies the first prong of a retaliation claim.

  B. <u>Injury</u>

Pena appears to argue that his injury was the denial of a job application and being yelled at by Beaird. Neither the Defendants nor Pena present any argument on this point to suggest that the denial of a job application or being yelled at would chill a person's exercise of his First Amendment rights. It stands to reason that a person who knew that petitioning the government for the redress of grievances would result in the denial of a job application may think twice about petitioning the government. However, I cannot say that simply being yelled at for "complaining" would deter a person from exercising their constitutional rights. For purposes of this motion, I

assume that Pena adequately stated an injury satisfying the second element of a retaliation claim by alleging that the retaliation came in the form of denying his job application and Beaird refusing to revisit the matter or order Pena to be hired.

### C. Motive

Finally, Pena must show that Beaird's adverse action was substantially motivated as a response to Pena's exercise of constitutionally protected conduct. Pena must "allege specific facts showing retaliation because of the exercise of [his] constitutional rights." *Fogle*, 435 F.3d at 1264 (quotation omitted); *see also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990). That is, Pena must show that Beaird had a retaliatory motive, and that "'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Circumstantial evidence of a retaliatory motive can be sufficient to support a claim through the summary judgment phase. *Smith*, 899 F.2d at 949.

The New Mexico Department of Corrections classifies inmate employment in the kitchen as a "[s]ecurity [s]ensitive [j]ob [a]ssignment." (Doc. 4 Ex. 4 at 2 (CD-100700).) When an inmate applies for a security sensitive position, the Inmate Employment Coordinator reviews the application for qualifications and then forwards the applications of qualified candidates to the Classification Supervisor, Unit Manager, or Program Manager, who reviews the applications and the files of each applicant. (Doc. 4 Ex. 5 at 2-3 (CD-100701).) If the Supervisor or Manager determines, based on the file review, that an inmate is inappropriate for a job assignment, the application is returned to the Inmate Employment Coordinator. (*Id.* at 3.) The Supervisor or Manager forwards the remaining applications to the Deputy Warden. (*Id.*) The Deputy Warden then makes the final selection, pending approval through the Classification Committee or

Supervisory Review. (*Id.*) Inmates can be denied for that particular security sensitive job or can be barred from all security sensitive jobs, depending on the circumstances. (*Id.*)

The Defendants argue that Beaird had no retaliatory motive and that, even if he did, any retaliatory motive was not the "but for" cause of his statement or the decision not to hire Pena to work in the kitchen. The Defendants instead assert that Pena's history of disciplinary infractions at LCCF caused facility personnel to determine that Pena was not an appropriate selection for a security sensitive position. Pena counters that the circumstances give rise to a retaliatory motive because, after his disciplinary actions at LCCF, he was able to obtain kitchen employment at other facilities.

Pena's contention is of no moment. The fact that other facilities reviewed his inmate file and determined that he was appropriate for a security sensitive position does not compel facility staff at LCCF to come to the same conclusion. Even assuming that Beaird knew of and was displeased by Pena's constitutionally protected activity, the circumstances surrounding the denial of Pena's application and ultimately being yelled at by Beaird do not suggest that these actions were substantially motivated by retaliatory intent, nor do they suggest that any retaliatory intent was the "but for" cause of the adverse action. I conclude that Pena failed to establish a retaliatory motive on behalf of Beaird.

Because Pena failed to meet the third prong of a First Amendment retaliation claim, his claim must fail as a matter of law. I recommend that the Court grant the Defendants' motion for summary judgment with regard to the retaliation claim against Beaird and dismiss this claim with prejudice.

## II.    State Law Claims

It is within the Court's sound discretion to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Because the state claims are the state analogs of the federal claims, the claims are based on the same set of facts, and none of the claims present a novel or complicated issue of state law, I recommend that the Court exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) (explaining the situations when a district court may decline to exercise supplemental jurisdiction); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173-74 (1997).

There are two types of state law claims remaining: 1) cruel and unusual punishment in violation of Article II, Section 13 of the Constitution of the State of New Mexico, and 2) due process violations contrary to Section 18. Sections 13 and 18 are the respective state analogs to the Eighth and Fourteenth Amendments. *Cordova v. LeMaster*, 96 P.3d 778, 781 (N.M. 2004). In both cases, the New Mexico Supreme Court follows federal law unless a party convincingly argues that state constitutional provisions should be construed more broadly than the federal protections. *Id.*

Here, the Court previously dismissed with prejudice all Eighth and Fourteenth Amendment claims in Counts 1, 2, 3, 5, 6, 7, 8, and 9, and the Eighth Amendment claim in Count 4. (Doc. 18.) Pena does not suggest that state law protections are any broader or should be analyzed under a different framework than the federal provisions. For the reasons explained in the Court's prior Memorandum Opinion and Order, and because Pena has failed to establish that any failure to follow internal procedures rose to the level of a state or federal constitutional violation, I recommend that the Court dismiss the remaining state law claims with prejudice.

**RULE 56(D) REQUEST**

More than a month after briefing was completed on the Defendants' motion for summary judgment, Pena filed a Rule 56(d) request seeking a delay in ruling on the motion for summary judgment and an order requiring the Defendants to produce certain documents. (Doc. 16.) Rule 56(d) allows a party to file an affidavit or declaration explaining why a motion for summary judgment should not be ruled on, but the affidavit or declaration must describe the particular discovery the affiant intends to seek, explain how that discovery would create a genuine issue of material fact or otherwise preclude summary judgment, and justify why the discovery had not been or could not have been obtained earlier. *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014); *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895-96 (8th Cir. 2014); *Pina v. Children's Place*, 740 F.3d 785, 794-95 (1st Cir. 2014).

Here, Pena does not describe the discovery he needs to "prove that the info [in the pleadings] is false." (Doc. 16 at 2.) He also does not explain how any discovery would create a genuine issue of material fact. He merely states that the Defendants have lied and that he needs "discovery" to respond, even though he responded to the motion for summary judgment and attached numerous documents to his original filing. While it is true that Pena has not had an opportunity to engage in formal discovery because prisoner cases are excluded from regular pretrial management procedures and discovery may not be sought until discovery is formally opened or the parties consent, D.N.M. LR-Civ. 16.3(d) and 26.4(a), there has clearly been an exchange of information in this case.

The decision to deny a Rule 56(d) discovery request is within the sound discretion of the Court. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015). I recommend that the Court deny Pena's Rule 56(d) request.

## CONCLUSION

For the reasons explained above, I recommend that the Court grant the Defendants' motion for summary judgment on the remaining federal claim and exercise its supplemental jurisdiction over the remaining state law claims to dismiss those claims with prejudice. I suggest that the Court exercise its discretion and deny Pena's Rule 56(d) request. Accordingly, I recommend that the Court dismiss this case with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.